**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Edward Alan Lipp,

Plaintiff,

v.

FSP Machinery (Canada) Inc. and
FSP International, Inc.,

Defendants.

Civil No. 01-698 (DWF/AJB)

**MEMORANDUM**
**OPINION AND ORDER**

---

Kyle E. Hart, Esq., Fabyanske, Westra & Hart, 920 2nd Avenue South, Suite 1100, Minneapolis, Minnesota 55402, appeared on behalf of Plaintiff.

Christopher Kaisershot, Esq., Flynn & Gaskins, 2900 Metropolitan Center, 333 South 7th Street, Minneapolis, Minnesota 55402, appeared on behalf of Defendant FSP International, Inc.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on November 2, 2001, pursuant to Defendant FSP International, Inc.'s Motion for Summary Judgment. In his Complaint, Plaintiff Edward A. Lipp brought a products liability action against Defendants FSP Machinery (Canada) Inc. ("FSP Machinery") and FSP International, Inc. ("FSP International"). By its current motion, Defendant FSP International, Inc. seeks summary judgment of the claims against it based on the contention that no matter which law is applied, that of Minnesota, Ohio, or Manitoba, Canada, FSP International, Inc. cannot be held liable under the theory of successor liability. Nonetheless, Defendant FSP International, Inc. maintains that Minnesota law is properly invoked in this case and, by its

FILED NOV 0 9 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 0 9 2001
DEPUTY CLERK

application, dictates that Defendant is entitled to summary judgment. While Plaintiff concedes that the application of either Minnesota or Ohio law would result in summary judgment in favor of Defendant FSP International, Inc., Plaintiff contends that the law of Manitoba, Canada should be applied and would thus preclude summary judgment as Defendant has requested. The Court finds that Minnesota, Ohio, and Manitoba apply the traditional rule of successor liability; accordingly, Defendant FSP International, Inc.'s Motion for Summary Judgment is granted.

**Background**

For purposes of the current motion, the parties agree on the relevant facts.

On October 13, 1999, while working in Wyoming, Minnesota, Plaintiff Edward A. Lipp alleges that he was injured by a rotational molding machine, manufactured by FSP Machinery (Canada), Inc.

Almost a year later, on September 8, 2000, FSP International, Inc. was incorporated under Ohio law. On September 19, 2000, FSP International and FSP Machinery negotiated an Asset Purchase Agreement by which FSP International purchased, for cash, certain assets from FSP Machinery. Those assets included: customer, supplier, and employee lists; intellectual property rights to certain business names and marks; contract rights; telephone numbers, web sites, and domain names; and goodwill. The officers, directors, and stockholders for FSP International were distinct from those that were involved with FSP Machinery. The transaction was finalized by September 29, 2000.

The Asset Purchase Agreement states in relevant part that:

> 1.6 Non-Assumption of Certain Liabilities. [FSP International] is not assuming, and shall not be deemed to have assumed, any liabilities or obligations of [FSP Machinery] of any kind or nature whatsoever, except as expressly provided in Section 1.5 hereof. Anything in Section 1.5 hereof or elsewhere in this Agreement to the contrary notwithstanding and without limiting the generality of

> the foregoing, it is hereby agreed that [FSP International] is not assuming, and shall not be deemed to have assumed, any liability and shall not have any obligation for or with respect to any liability, or obligation of . . . [FSP Machinery] . . . (iii) arising out of any action, suit or proceeding based upon an event or a claim arising (x) prior to [September 29, 2000] or (y) after [September 29, 2000] in the case of claims in respect of products sold by . . . [FSP Machinery] prior to [September 29, 2000] and attributable to acts performed or omitted by . . . [FSP Machinery] prior to [September 29, 2000].
>
> * * *
>
> 7.4 Governing Law. THIS AGREEMENT AND ALL QUESTIONS RELATING TO ITS VALIDITY, INTERPRETATION, PERFORMANCE, AND ENFORCEMENT (INCLUDING WITHOUT LIMITATION, PROVISIONS CONCERNING LIMITATIONS OF ACTION), SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF MANITOBA (EXCLUSIVE OF THE CONFLICT OF LAW PROVISIONS THEREOF) APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH PROVINCE.

Also on September 29, 2000, FSP International leased the facility in Manitoba, Canada, formerly occupied by FSP Machinery, and continued production of the FSP product line. Pursuant to the Asset Purchase Agreement, FSP International offered employment to the FSP Machinery employees for a period of time not less than six months. In addition, FSP International also hired an affiliate of FSP Machinery to act as the general manager of the plant.

Subsequent to the asset purchase, FSP Machinery "discontinued its operations." On February 22, 2001, FSP International announced the closing of the Manitoba plant and its intention to transfer operations to Ohio. By March 8, 2001, all employees, including the plant manager, of the Manitoba facility were terminated, and operations at the Manitoba plant had ceased.

Plaintiff brought the current action on March 23, 2001.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

### 2. Issues

#### a. In General

As the Court has stated above, the parties do not dispute the facts for purposes of this motion. Instead, the parties agree that their dispute focuses on the choice of law to be applied to those facts. Plaintiff maintains that the Court should apply Manitoba law on successor liability,

and in doing so, the Court will find that summary judgment should not be issued for Defendant FSP International. To the contrary, however, Defendant FSP International contends that the Court should apply Minnesota law; but whether the Court applies Minnesota, Manitoba, or even Ohio law, Defendant contends that the Court will find summary judgment to be appropriate.[1]

The parties agree that if Minnesota law on successor liability is applied to the facts of this case, summary judgment will be appropriate. In Minnesota, "where one company sells or otherwise transfers all its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor." *J. F. Anderson Lumber Co. v. Myers*, 206 N.W.2d 365, 368 (Minn. 1973). Courts are to apply the general rule unless one of the following four exceptions is found to exist: (1) the buyer agrees to assume seller's debts and liabilities; (2) the transaction amounts to a merger; (3) the purchaser is merely a continuation of the seller corporation; or (4) the transaction was fraudulently entered into in order to escape liability for such debts. *Id.* A fifth exception that is often incorporated into one of the aforementioned exceptions is the transfer of assets without the exchange of adequate consideration. *Id.* As the Court has stated, the parties agree that the facts do not evince any of the aforementioned exceptions and that, upon application, the general rule dictates that FSP International is not liable as the successor of FSP Machinery.

Plaintiff argues, however, that if Manitoba law is applied, the "product line theory" of successor liability will be available for the Court to apply and to find a viable cause of action against FSP International. Under the "product line theory," "a successor corporation which

---

[1] Because the parties agree that this action will only proceed should the Court determine that Manitoba law shall apply and that Manitoba law allows for an expansive approach to successor liability, the Court will refrain from evaluating the application of Ohio law though it appreciates the comprehensive review provided by Defendant in its submissions.

continues to manufacture a product of the business it acquires, regardless of the method of acquisition or any possible attribution of fault, assumes strict liability for products manufactured and sold before the change of corporate ownerships." *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 100 (Minn. 1989) (citing *Ray v. Alad Corp.,* 560 P.2d 3, 11 (1977)). In *Niccum*, the Minnesota Supreme Court declined to adopt the "product line theory." *Id.* Indeed, of the thirty-three American jurisdictions that have considered the "product line theory" of successor liability, only five states have adopted the theory. Plaintiff contends, however, that Canadian courts, including Manitoba, at least have allowed for the "possibility" that the theory could apply.

In 1993, an Alberta court found that while there was no Canadian or British law expanding the traditional rule of successor liability, there was a *possibility* that a Canadian court could adopt the more expansive approach of the "product line theory" ascribed to by certain American courts. *Suncor Inc. v. Canada Wire & Cable Ltd.*, [1993] 3 W.W.R. 630, ¶¶ 23-28 (Alberta) (citing *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811 (N.J. 1981), for its adoption of expansive successor liability). Whether or not such a possibility ever became reality in any Canadian court, however, remains a mystery to this Court. Because the court in *Suncor* found the law on successor liability to be unclear in that case, it determined, pursuant to Canadian procedural rules, that the issue should be left for the trial court to decide and thus declined to issue summary judgment.[2] *Id.* at ¶ 28. This Court has been unable to determine what the *Suncor*

---

[2] The Court agrees with Defendant's statement of the law that *Hanna v. Plumer*, 380 U.S. 460, 464-66 (1965), requires that the procedural laws of the forum be applied even if the substantive law of another jurisdiction is invoked. However, the Court does not find this holding to be particularly probative in this case. The Court does not question that American procedural rules are appropriately applied here; however, the distinctions between the Canadian and American procedures for summary judgment are relevant in this case to the degree that they have created the ambiguity in the Canadian substantive law on successor liability that the Court (continued...)

trial court ultimately decided. Moreover, the few cases that cite *Suncor* with approval also do not elaborate on the state of the law, and instead merely reiterate that the possibility remains for the trial court to determine, thus precluding summary judgment. *See, e.g., Western Canadian Place Ltd. v. Con-Force Products Ltd.*, [1998] 1 W.W.R. 527, ¶¶ 51-54 (Alberta); *Boehler v. Blaser Jagdwaffen GmbH*, 2000 B.C.S.C. 710, ¶¶ 15-21 (British Columbia).

While this Court cannot claim to fully comprehend the scope and appropriate application of successor liability under Canadian substantive law, this Court does find that, at most, there is the *possibility* in some Canadian courts that the "product line theory" could be found to apply. However, if Canadian law is to apply at all in this case, the Court must look specifically to the law of the Manitoba Province. The only case instructive on this issue is *Winnipeg Condo. Corp., No. 36 v. Bird Construction*, [1999] 2 W.W.R. 370 (Manitoba). In *Winnipeg Condo.*, after a portion of exterior cladding detached and fell to the ground, a plaintiff condominium corporation brought suit against the company that constructed plaintiff's building. Upon learning that the construction company had dissolved subsequent to selling its total assets to an architectural corporation, plaintiff attempted to amend its complaint to bring suit against the architectural corporation, under a theory of successor liability. In support of its theory of successor liability, plaintiff's counsel specifically directed the court to *Suncor*.

However, applying the traditional rule of successor liability, the *Winnipeg Condo.* court found that no reasonable cause of action could be brought against the architectural corporation as a successor corporation. *Id.* at ¶ 51. The *Winnipeg Condo.* court specifically noted that there was no agreement between the parties by which the architectural corporation would assume

---

[2](...continued)
and the parties now struggle to decipher.

liability, and it declined to impose one "by operation of law." *Id.* In support of its decision, the *Winnipeg Condo.* court cited with approval the decision in *Cominco Ltd. v. Westinghouse Canada Ltd.*, [1981] 45 B.C.L.R. 26 (British Columbia), where the court also followed the traditional rule of successor liability and declined to impose a duty to warn upon a successor corporation that had specifically contracted against assuming liability of its predecessor. The *Suncor* court distinguished *Cominco* for its brief legal analysis of successor liability and further speculated that the *Cominco* court had not considered the *Ramirez* decision upon which it relied perhaps, having been issued only two months before the decision in *Cominco*. Having the benefit of the analysis by both the courts in *Cominco* and *Suncor*, however, the court in *Winnipeg Condo.* had the opportunity to consider the application of either the traditional or more expansive theory of successor liability, and it found the traditional rule to apply. Based on *Winnipeg Condo.*, this Court must conclude that Manitoba law, like that of Minnesota, requires the application of the traditional rule of successor liability.

To the extent that Plaintiff argues that the Manitoba court in *Winnipeg Condo.* left open the possibility that the product line theory could apply to circumstances in another case, holding only that it did not apply under those particular circumstances, the Court finds no material distinction from the instant facts that would lead to a different result. Nonetheless, the Court respectfully disagrees with Plaintiff's contention that Manitoba has adopted a more expansive approach to successor liability, nor even the *possibility* that such an approach is appropriately applied. Plaintiff's counsel in *Winnipeg Condo.* specifically directed the court to *Suncor* on the very issue of successor liability, and the court rejected its application. While the literal language of the *Winnipeg Condo* decision likely leaves open the door to future consideration of whether a more expansive approach is appropriate, such an approach has yet to be cited with published

approval by a Manitoba court, and this Court declines to impose that possibility when it, at least once, has been expressly declined. Accordingly, the Court finds that both Minnesota and Manitoba apply the traditional rule of successor liability; and as such, no viable products liability claim can be brought by Plaintiff against FSP International.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant's Motion for Summary Judgment (Doc. No. 15) is **GRANTED**; and

2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 9, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*